IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Diane Fisher,                                        Case No. 3:18CV1708

        Plaintiff

        v.                                                  ORDER

Commissioner of Social Security,

        Defendant

       This is a Social Security appeal. Plaintiff Diane Fisher appeals the Commissioner's decision denying her application for benefits.

       Fisher applied for Social Security benefits on September 22, 2015. (Doc. 15 at PageID # 329). The Commissioner denied her application, and Fisher requested a hearing before an administrative law judge (ALJ). (Doc. 15 at PageID # 117).

       In a December 6, 2017 decision (Doc. 15 at PageID # 114), the ALJ rejected Fisher's claim. The ALJ determined that Fisher suffers from three severe impairments – degenerative disc disease, plantar fasciitis, and obesity – but that she retains the residual functional capacity (RFC) to perform sedentary work with restrictions.[1] (*Id.* at PageID #119-21). Within this RFC, the ALJ

---

[1] Fisher "can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds, and frequently balance. She must avoid concentrated exposure to extreme heat and cold. Finally, she can never be exposed to hazardous machinery, unprotected heights, or commercial driving." (Doc. 15 at PageID #119-21).

concluded, Fisher can perform her past relevant work as a bill collector and telephone solicitor. (*Id.* at PageID #127).

Fisher appealed, and, on May 25, 2018, the Appeals Council upheld the ALJ's decision. (*Id.* at PageID #102).

Pending is Magistrate Judge Kathleen B. Burke's Report and Recommendation, which recommends that I affirm the denial of benefits. (Doc. 25). Fisher has filed objections. (Doc. 27).

On *de novo* review of the R&R, *see* 28 U.S.C. § 636(b)(1), I sustain the objections in part and overrule them in part, adopt the R&R in part and reject it in part, and remand the Commissioner's decision.

## Discussion

Fisher argues that the ALJ 1) was not properly appointed under the Constitution and 2) committed reversible error in giving little weight to four treating physician opinions.

### I. Fisher's Appointments Clause Challenge Was Untimely

Under the Appointments Clause of the Constitution, "Congress may . . . vest the Appointment of . . . Officers [of the United States] . . . as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2.

On June 21, 2018, the Supreme Court in *Lucia v. Securities & Exchange Commission*, --- U.S. ----, 138 S.Ct. 2044, 2055 (2018), held that SEC "ALJs are 'Officers of the United States' subject to the Appointments Clause." "The *Lucia* opinion and its preceding circuit split prompted questions about whether all administrative agencies must appoint ALJs under the Appointments Clause." *Gilbert v. Comm'r of Soc. Sec.*, --- F. Supp. 3d ----, 2019 WL 2281247, at *1 (N.D. Ohio) (Carr, J.). In turn, Social Security claimants began appealing benefits denials on

2

Appointments Clause grounds. *E.g.*, *id.*; *see also Harris v. Berryhill*, 2019 WL 3431750, *1 (W.D. Tenn.) (collecting cases).

### A. Fisher Failed to Exhaust Her Appointments Clause Challenge

In her August 15, 2018 complaint, Fisher voiced her Appointments Clause challenge for the first time. (Doc. 7). The magistrate judge determined that, because Fisher did not exhaust the Appointments Clause issue at the agency level, her objection is untimely. (Doc. 25 at 12-13).

I agree with the magistrate judge.

"[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." *Ryder v. United States*, 515 U.S. 177, 182-83, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995). In *Lucia*, *supra*, 138 S.Ct. at 2055, the court deemed petitioner's challenge timely because he raised it "before the Commission, and continued pressing [it] in the Court of Appeals and th[e Supreme] Court." "But neither the Supreme Court nor the Sixth Circuit has set a stopwatch time at which Appointments Clause challenges become untimely." *Gilbert*, *supra*, 2019 WL 2281247 at *2.

Fisher, like the *Gilbert* plaintiff, argues that *Sims v. Apfel*, 530 U.S. 103 (1952), rendered administrative exhaustion unnecessary. (Doc. 27 at 2-3).

I rejected that argument in *Gilbert*, 2019 WL 2281247 at *2-*3, and I do so again here.

> In *Sims*, *supra*, 530 U.S. at 112, 120 S.Ct. 2080, the Supreme Court held that a Social Security claimant may bring issues before a court even if the claimant failed to exhaust them before the Appeals Council. The Court so held because "Social Security proceedings are inquisitorial rather than adversarial[,]" and, therefore, the reason for requiring exhaustion – that is, the extent to which administrative actions mirror judicial proceedings – "is at its weakest in this area." *Id.*

*Gilbert*, 2019 WL 2281247 at *2.

But "'[w]hether a claimant must exhaust issues before the ALJ' – or before the agency, generally – was 'not before' the Court in *Sims*, 530 U.S. at 107, 108." *Gilbert*, *supra*, 2019 WL 2281247 at *2.

I therefore determined that the *Gilbert* claimant's "argument 'overextends *Sims*'s limited holding.'" *Id.* (quoting *Hutchins v. Berryhill*, 376 F. Supp. 3d 775, 779 (E.D. Mich. 2019)). Fisher likewise stretches *Sims* beyond its limits.

Moreover, "*Sims* is distinguishable." *Gilbert*, *supra*, 2019 WL 2281247 at *2. The *Sims* claimant "challenged how the ALJ evaluated the evidence, so her objections could not materialize until the ALJ issued a decision." 530 U.S. at 105-06. But, here, as in *Gilbert*, *supra*, 2019 WL 2281247 at *2, "the grounds for [Fisher's] Appointments Clause challenge arose when SSA assigned the ALJ to her claim. Accordingly, [Fisher] had an opportunity, not available in *Sims*, to voice her objection."

### B. Exhaustion Was Not Futile

"A court may excuse a plaintiff from exhaustion where 'it would be futile.'" *Gilbert*, *supra*, 2019 WL 2281247 at *3 (quoting *Hill v. Blue Cross & Blue Shield*, 409 F.3d 710, 717 (6th Cir. 2005)).

Fisher argues that, here, exhaustion was futile because "[n]either the ALJ nor the Appeals Council was competent to decide the Appointments Clause issue, given the directives issued by Defendant that the issue would not be considered administratively." (Doc. 27 at 3-4). Presumably, the "directives" Fisher references are SSA's instructions in its January 30, 2018 emergency message, EM-18003 (Doc. 16-1). EM-18003 instructed ALJs to "acknowledge" Appointments Clause objections and note them on decision records but barred the Appeals

4

Council from "acknowledge[ing], mak[ing] findings related to, or otherwise discuss[ing] Appointments Clause issue[s]." (Doc. 16-1).

"[T]he crucible of administrative review ensures that the petitioner's case presents a true constitutional dispute before the Judiciary steps in to decide those weighty issues." *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 676 (6th Cir. 2018). "Administrative exhaustion is thus typically required so long as there is the 'possibility of some relief for the action complained of,' even if it is not the petitioner's preferred remedy." *Id.* (quoting *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)).

> In *Jones Brothers, Inc.*, *supra*, the Sixth Circuit held that the exhaustion requirement applied to petitioners' Appointments Clause challenge before the Mine Commission. 898 F.3d at 672, 674 (citing 30 U.S.C. § 823(b)). The court offered the following hypothetical to demonstrate the futility exception:
>
>> Imagine an alternative Mine Act that said, "the Chief Administrative Law Judge shall appoint two administrative law judges to adjudicate borrow pit enforcement actions." If administrative law judges are inferior officers, the Commission would have no way to cure the constitutional violation. The Mine Commission is bound by the Mine Act, and there is no permissible way to interpret that hypothetical statute in a manner consistent with the Appointments Clause. In that setting, it would be futile to bring that claim to the Commission and senseless for an Article III court to enforce forfeiture.
>
> *Id.* at 677.
>
> Accordingly, "[w]hat matters . . . is [whether] the [agency] was fully suited to entertain the claim and remedy any error at the time" of administrative review. *Id.*

*Gilbert*, *supra*, 2019 WL 2281247 at *3-*4.

The agency was fully suited to address Fisher's challenge.

"The Supreme Court has offered good reasons why a seemingly rigid agency policy against a litigant's position should not excuse the requirement to raise objections at the administrative level[.]" *Fortin v. Comm'r of Soc. Sec.*, 372 F. Supp. 3d 558, 566 (E.D. Mich. 2019) (quoting *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952)).

> [T]he Commission is obliged to deal with a large number of like cases. Repetition of the objection in them might lead to a change of policy, or, if it did not, the Commission would at least be put on notice of the accumulating risk of wholesale reversals being incurred by its persistence. Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.

*L.A. Tucker Truck Lines*, 344 U.S. at 37.

The Court in *L.A. Tucker Truck Lines*, *supra*, 344 U.S. at 37, "rejected an argument that internal policy requiring the agency to reject Administrative Procedure Act appointments challenges rendered exhaustion futile[.]" *Gilbert*, *supra*, 2019 WL 2281247 at *4.

Accordingly, in *Gilbert*, *supra*, 2019 WL 2281247 at *4, I held that EM-18003 did not excuse claimant from exhausting her Appointments Clause challenge. The same conclusion applies here.

Finally, Fisher asks me to excuse exhaustion by adopting the reasoning in *Bizarre v. Berryhill*, 364 F. Supp. 3d 418 (M.D. Pa. 2019). (Doc. 27 at 5-6).

I decline that invitation.

The court in *Bizarre*, *supra*, 364 F. Supp. 3d at 420, applying *Freytag v. Commissioner of Internal Revenue*, 501 U.S. 868 (1991), held that Social Security claimants need not administratively exhaust issues.

In *Freytag*, *supra*, 501 U.S. at 878-89, the Court explained that "Appointments Clause objections to judicial officers" are "in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled on below[.]" The Court deemed petitioner's Appointments Clause challenge to a U.S. Tax Court Special Judge's authority "one of those rare cases in which [the Court] should exercise its discretion to hear" such an objection. *Id.* at 880.

> I disagree with the *Bizarre* court's application of *Freytag*. The Court in *Freytag* "did not create a categorical rule excusing Appointments clause challenges from general waiver and forfeiture principles." *Hutchins*, *supra*, 376 U.S. at 779. And the *Bizarre* claimant, like [Fisher] could have discovered his claim as early as 1) June, 2017, when the circuit split preceding *Lucia* arose, or 2) January, 2018, when the Supreme Court granted certiorari in *Lucia*. Yet the *Bizarre* claimant slept on his challenge until July, 2018.

*Gilbert*, *supra*, 2019 WL 2281247 at *4.

Accordingly, Fisher waived her Appointments Clause challenge when she did not raise it before the agency.

### II. Treating Physician Rule

Fisher also objects to the magistrate judge's conclusion that the ALJ's failure to observe the so-called "treating physician rule" was harmless error.

I will sustain this objection.

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in the case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (quoting 20 C.F.R. § 404.1527(c)(2)) (internal brackets omitted). An ALJ "is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)). The treating source rule recognizes that treating "sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2).

The ALJ gave little weight to four opinions from treating podiatrist Dr. Kristina Green.

7

While under Dr. Green's care, Fisher worked in jobs that required her to stand for all or most of her four- or five-hour shifts.[2] Dr. Green concluded, respectively, that Fisher 1) could work three days per week (4/1/2015 opinion); 2) needed to work reduced hours for three weeks (9/15/2015 opinion); and 3) could work fifteen hours per week (9/23/2015 and 10/6/2015 opinions).[3] (Doc. 15 at PageID# 126).

The ALJ discounted these opinions, in part, as "without substantial support from any objective clinical or diagnostic findings[.]" (*Id.*). But, as the magistrate judge explained in the R&R, "there were clinical and diagnostic findings[,]" including x-rays and exam notes, "to support Dr. Green's opinions[.]" (Doc. 25 at 17). Accordingly, the ALJ violated the treating source rule. *See* 20 C.F.R. § 404.1527(c)(2).

In *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)(2004)), the Sixth Circuit explained, in dicta, that "a *de minimis* violation" of the treating source regulation "may qualify as harmless error[]" under certain circumstances:

> For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal. There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant *that the ALJ did not give weight to the treating physician's opinion*, and the failure to give reasons for not giving such weight is correspondingly irrelevant. Or perhaps a situation could arise where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural

---

[2] When she saw Dr. Green, Fisher worked alternatively as a hotel breakfast attendant and a massage therapist. The former required that she stand almost constantly for five-hour shifts, while the latter involved two hours of massage, a one-hour break, and two more hours of massage. (Doc. 15 at PageID # 47-49, 121).

[3] The ALJ also gave little weight to Dr. Green's October 29, 2015 and January 5, 2016 opinions. (Doc. 15 at PageID # 126). Fisher does not contest those findings. (*See* Doc. 27).

8

>   safeguard of reasons—even though she has not complied with the terms of the
>   regulation.

*Id.* at 547 (internal citations omitted) (emphasis added).

Here, the magistrate judge reasoned that the ALJ's error was harmless because the RFC was consistent with Dr. Green's opinions. She so concluded because sedentary work limits "periods of standing or walking . . . [to] no more than about 2 hours in an 8-hour workday[,]" or ten hours in a workweek, while "[Dr.] Green . . . provided work restrictions limiting Fisher to 12 to 15 hours a week[]"in jobs that required constant standing. (Doc 25 at 19 (citing 20 C.F.R. § 404.1567(a); SSR 83-10, 1983 WL 31251 at *5)).

Fisher argues that the magistrate judge improperly applied the harmless error exception to the treating source rule's "substantive" requirement rather than the procedural "good reasons" requirement. (Doc. 27 at 8 (quoting *Flores v. Comm'r of Soc. Sec.*, 2013 WL 504155, *3 (Baughman, Mag. J.)).

In *Flores*, *supra*, 2013 WL 504155 at *3, the court "distinguish[ed] between the so-called treating physician rule and the good reasons requirement." The former, the court explained, "essentially establishes a rebuttable presumption . . . that the opinion of a treating physician will be afforded controlling weight[,]" while the latter "is based not upon a presumption . . .[,] but on a two-fold purpose: (1) to let claimants understand the disposition of their case, particularly where a claimant knows her own physician has found her disabled and so may be 'especially bewildered' when told she is not; and (2) to permit 'meaningful review' of an ALJ's decision by the district court." *Id.* (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d, 399, 406-07 (6th Cir. 2009)). "So understood," the court explained, "the harmless error analysis set forth in *Wilson* goes to the 'good reasons' requirement of the treating physician rubric." *Id.* (citing *Blakely*, *supra*, 581 F.3d at 409).

I decline to take the categorical approach outlined in *Flores*.

The Sixth Circuit has not expressly limited the harmless error exception in the manner *Flores* describes, and I have found no other cases within this Circuit so limiting the exception.

Moreover, *Flores* is distinguishable.

In *Flores*, 2013 WL 504155 at *4-*7, the court rejected the Commissioner's argument that the ALJ committed harmless error in overlooking two treating sources' opinions, which, the Commissioner claimed, were "so patently deficient that the reasons for the ALJ's decision not to credit them [were] clear[.]"

Here, the ALJ addressed each of Dr. Green's opinions and provided reasons – though at least one of those reasons was wrong – for discounting them. In *Flores*, 2019 WL 504155 at *2, ALJ "did not acknowledge" the treating source opinions at all. And, here, the magistrate judge applied *Wilson*'s "consistency" category, not the "patently deficient" category. Under the consistency category, an ALJ's failure to give a treating physician's opinion controlling weight in the first instance "may be irrelevant" if the RFC determination is consistent with the opinion. *See* 378 F.3d at 547.

I will remand the case to the agency, however, because it is not clear on this record whether the RFC is consistent with Dr. Green's opinions. Dr. Green determined that Fisher could work up to fifteen hours per week, not that she could stand as long. (*See* Doc. 15 at PageID #845). That Fisher worked in jobs that required standing at length while under Dr. Green's care may inform the weight the ALJ ultimately assigns to Dr. Green's opinions. But that fact does not, in and of itself, render the RFC consistent with Dr. Green's prescribed restrictions.

Accordingly, the ALJ's failure to observe the treating physician rule was not harmless in this case.

## Conclusion

It is, therefore,

ORDERED THAT

1. Plaintiff Fisher's objections to the R&R (Doc. 27) be, and the same hereby are, sustained in part and overruled in part;

2. The R&R (Doc. 25) is adopted in part and remanded in part; and

3. This case shall be remanded to the agency for findings consistent with this opinion.

So ordered.

/s/James G. Carr<br>Sr. U.S. District Judge